IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| **KATHERINE REYNOLDS,** | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL NO. 3:09CV238 |
| **RELIABLE TRANSMISSIONS, INC.** | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter is before the Court on the Plaintiff's motion for summary judgment (Docket No. 27). The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process. For the reasons set forth herein, Plaintiff's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

### I. FACTUAL BACKGROUND

This action concerns an alleged oral contract between the Plaintiff, Katherine Reynolds ("Reynolds"), and the Defendant, Reliable Transmissions, Inc. ("Reliable"), for the repair of Reynolds' vehicle. (Pl.'s Am. Mem. Supp. Mot. Summ. J. Ex. B ¶ 12 [hereinafter Pl.'s Mem.]; Compl. ¶ 1.)[1] On or about October 24, 2008, Reynolds had her vehicle towed to Reliable's

---

[1] Pursuant to Rule 36 of the Federal Rules of Civil Procedure, where Reliable failed to respond or object to Plaintiff's Request for Admissions, Ex. B, said factual assertions are deemed admitted. Fed. R. Civ. P. 36; (Pl.'s Mem. at 4-5).

1

facility and requested that her vehicle's transmission be repaired. (Compl. ¶ 7.) Reliable initially quoted Reynolds a charge of $750.00 to perform all repairs; however, Reliable admits that it had no intention of repairing Reynolds' vehicle for just $750.00. (Pl.'s Mem. Ex. B ¶¶ 2, 3; id. Ex. C 14:8-10.) Reliable concedes that Reynolds had her car towed to Reliable's facility based upon Reliable's representation of being able to complete the job for $750.00. (Pl.'s Mem. Ex. B ¶ 3; Id. Ex. C 14:8-14; Compl. ¶ 7.) However, on October 30, 2008, Reliable telephoned Reynolds and informed her that it would require more than the initially quoted $750.00 to repair her transmission. (Compl. ¶ 10.) Reynolds requested that the transmission be reassembled and demanded the return of her vehicle. (Id. ¶¶ 11, 18; Answer ¶ 18.) Reliable refused to release the vehicle pending complete payment.[2] (Compl. ¶ 19; Answer ¶ 19.) The vehicle was finally returned to Reynolds in mid-April of 2009, without payment of the disputed sum. (Pl.'s Mem. ¶ 19.)

Reynolds' vehicle was damaged while in Reliable's possession. (Pl.'s Mem. Ex. B ¶ 10.) The vehicle is currently in a state of incomplete repair and has lost approximately $1,550.00-$1,950.00 in value.[3] (Pl.'s Mem. Ex. D.) Reynolds maintains that she is presently deprived of the use of her vehicle; however, she is in physical possession of it. (Id. ¶ 19.)

Additionally, Reynolds claims that Reliable accessed her credit file even though she never applied for credit from Reliable. (Id. Ex. B ¶¶ 4, 5.) Reliable admits to falsifying an

---

[2] Reliable asserts that the pending charges were for work authorized by Reynolds; however, it is not clear what the pending charges are. (Answer ¶ 19; Pl.'s Mem. Ex. C 32:1-3.) According to Reliable, Reynolds owed $414.75 for authorized work and $1,500.00 for ordered parts. However, Reliable concedes that the ordered parts were returned. (Pl.'s Mem. Ex. C 23:3-8, 33:11-34:7, 37:6-14.)

[3] Reynolds' vehicle is a 1999 Oldsmobile Delta 88. On October 23, 2009, if the vehicle were in good, overall mechanical, cosmetic, and running condition, it would have had a retail sale value of $1,800.00-$2,200.00. In its present condition, the vehicle has a maximum value of only $250.00. (Pl.'s Mem. Ex. D.)

application for credit by Reynolds, submitting it to G.E. Capital Financial, Inc. ("GE"), and that any decision to grant or deny credit to Reynolds was made by Reliable. (Id. ¶¶ 6-8.) Reliable contacted Reynolds and told her in a telephone conversation that her credit application had been denied. However, Reliable never forwarded a written adverse action notice to Reynolds informing her that her financing was not approved, nor was she given a statement of reasons for the denial. (Compl. ¶ 1; Pl.'s Mem. Ex. B ¶ 9; Id. at 9; Id. Ex. C 30:3-5, 30:21-31:14.)

In sum, Reynolds alleges that Reliable deceived and lied to her; that despite Reynolds' declining Reliable's offer to obtain her financing, Reliable completed a credit application on behalf of Reynolds and did not comply with statutory requirements in rejecting it; and that Reliable unlawfully held possession of, and damaged, Reynolds' vehicle after she demanded its return. (Compl. ¶¶ 1, 22; see Pl's Mem. Ex. B. ¶ 10.) Reynolds seeks monetary damages and injunctive relief. (Compl. at Wherefore Clause.)

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. Id. at 255.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48 (emphasis in original). Indeed, summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of some "metaphysical doubt" concerning a material fact. Lewis v. City of Va. Beach Sheriff's Office, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

Furthermore, a "material fact" is a fact that might affect the outcome of a party's case. Anderson, 477 U.S. at 247-48; JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; see also Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact only arises when the evidence, when viewed in the light most

4

favorable to the non-moving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. Anderson, 477 U.S. at 248.

### III. ANALYSIS

**A.      Equal Credit Opportunity Act**

Reynolds asserts that Reliable violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691-1691f, because Reliable failed to provide Reynolds with any written notice of adverse action on her credit application and because there was an inaccurate oral notice of denial. (Compl. ¶¶ 24, 25.)   The ECOA provides that a creditor shall notify an applicant for credit of any adverse action on the application within thirty days after receipt of a completed application for credit.  15 U.S.C. § 1691(d)(1).  Furthermore, the ECOA provides that each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such adverse action. Id. § 1691(d)(2).  The ECOA defines adverse action to include a denial of credit.  Id. § 1691(d)(6).  As this Court has stated in regard to the ECOA: "'Each applicant against whom adverse action is taken' is entitled to a written notification of both the action and the 'specific reasons for the adverse action taken.'"  Diaz v. Va. Housing Dev. Auth., 117 F. Supp. 2d 500, 503 (E.D. Va. 2000) (citing 15 U.S.C. § 1691(d)(2)-(3)); see 12 C.F.R § 202.9(a)(2).

Reliable is considered a creditor subject to the ECOA.  "The term 'creditor' means any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit…." 15 U.S.C. § 1691a(e).  Reliable interacts with various financing companies, including GE with which Reliable maintains a terminal, directly linked to GE, for financing.  (Pl.'s Mem. Ex. C 27:14-21, 28:10-25, 30:9-17.)  Reliable also provides its own "in-house" financing.  (Id. 32:7-12.)

5

Furthermore, Reynolds is considered an applicant under the ECOA. "[A]n Applicant means any person … who is or may become contractually liable regarding an extension of credit." ECOA Regulation B, 12 C.F.R. § 202.2(e). Reynolds never applied for credit from Reliable. (Pl.'s Mem. Ex. B ¶ 5.) However, she is nevertheless considered to be an applicant because Reliable accessed her credit file anyway in order to falsify an application for credit on her behalf, submitting it to GE. (Id. ¶¶ 4, 6, 7.)

Reliable took adverse action because Reynolds was denied credit; Reliable told Reynolds that her credit application had been denied, and Reliable admits that any decision to grant or deny credit to Reynolds was made by Reliable. (Id. Ex. C 30:3-5, 21-23); Id. Ex. B ¶ 8.) Additionally, Reliable failed to notify Reynolds in writing that her financing was not approved, and failed to provide her with a statement of reasons for the denial. (Id. Ex. B ¶ 9; Id. at 9; Id. Ex. C 30:21-31:14.)

Pursuant to the ECOA, creditors, acting on 150 or less applications during the calendar year preceding the calendar year in which the adverse action was taken, may provide oral notice of denial. 15 U.S.C. § 1691(d)(2)(B), (d)(5); Diaz, 117 F. Supp. 2d at 506 n.9; 12 C.F.R. § 202.9(d). There is no evidence before the Court at this stage as to whether Reliable acted on 150 or less credit applications during the pertinent year and, therefore, a material fact is not established that precludes dispositive relief as to that issue. However, Reynolds is entitled to summary judgment on the basis that Reliable failed to notify Reynolds of the reasons for the adverse action, whether the denial was given orally or in written form. (Pl.'s Mem. Ex. B ¶ 9; Id. at 9; Id. Ex. C 30:21-31:14.) Assuming, arguendo, that oral notice was sufficient, the ECOA nevertheless requires that in addition to the oral notification of denial of credit, Reynolds also be

6

made aware of: (1) the reason for denial; (2) the identity of the person from whom a statement of reasons may be obtained; or (3) her right to have the statement of reasons confirmed in writing on request if the statement of reasons was given orally at the time of notification. 15 U.S.C. § 1691(d)(2)(B). Reynolds was not presented with any reason for her denial of credit, or any of the additional information required by 15 U.S.C. § 1691(d)(2)(B). Accordingly, there is no disputed question of material fact regarding whether there was a violation of the ECOA for failure to provide the information required by the Act, and summary judgment on the ECOA claim must therefore be GRANTED on that basis.

**B.    Virginia Automobile Repair Facilities Act**

Reynolds asserts that Reliable also violated the Virginia Automobile Repair Facilities Act ("VARFA"), Va. Code Ann. §§ 59.1-207.1 to -207.6, because Reliable: (1) failed to display a Customer Rights sign; (2) failed to provide Reynolds with a written estimate of repairs; (3) performed work on the vehicle's transmission after instructed to halt all repairs; (4) caused damage to the vehicle; and (5) failed to return the vehicle to Reynolds when requested. (Compl. ¶ 31.) As set forth herein, there are questions of material fact regarding whether Reliable violated VARFA,[3] and, therefore, Reynolds' motion for summary judgment on the VARFA claim must be DENIED.

    **1.    Customer Rights Sign**

VARFA provides that automobile repair facilities must display a "Customer Rights" sign that includes information to the effect that customers may receive a written estimate on request, and that no repair work charge may exceed the written estimate by more than ten percent unless

---

[3] There are genuine issues of material fact as to whether any Customer Rights signage was in place as well as whether Reynolds requested a written estimate of repairs.

authorized by the customer. Va. Code Ann. § 59.1-207.3(c). There is no dispute that Reliable is considered an automobile repair facility subject to the Act. Id. § 59.1-207.2. However, Reliable asserts that a customer rights sign is, in fact, posted, and has been in place for four and one-half years pursuant to court order. (Pl.'s Mem. Ex. C 34:13-23.) Accordingly, there appears to be a disputed question of material fact regarding whether a Customer Rights sign was displayed.

### 2. Written Estimate

VARFA also provides that "[u]pon request by a customer, prior to the commencement of any repair work on a motor vehicle[,] … every automobile repair facility … shall provide the customer a written statement of … the estimated [costs, time, etc.]…." Va. Code Ann. § 59.1-207.3(A) (emphasis added). VARFA does not require a written estimate be provided unless one is requested. Id. There is nothing in the record at present to establish that Reynolds requested a written estimate of repairs. Accordingly, there is a question of material fact regarding whether Reliable had an obligation to provide Reynolds a written statement and dispositive relief on that issue is therefore precluded.

### 3. Work Performed After Instructed Otherwise

VARFA further provides that "[w]here a written estimate is requested, no repair work … may be undertaken … until the written estimate has been provided [to] the customer and the customer has authorized the work …." Id. § 59.1-207.3(B). Because there is also a question of material fact as to whether Reynolds requested a written estimate, it cannot be determined at this stage whether Reliable violated that section of VARFA.

### 4. Damage to Vehicle

Reynolds also asserts that the damage to her vehicle by Reliable constitutes a violation of VARFA. However, VARFA does not apply to damage to a vehicle caused by an automobile repair facility. Id. §§ 59.1-207.1 to -207.6.

### 5. Failure to Return Vehicle on Request

Reynolds further asserts that Reliable's failure to return her vehicle constitutes a violation of VARFA. VARFA requires an automobile repair facility to offer to return replaced parts. Id. § 59.1-207.3(C)(4). VARFA also states that such a facility "shall offer at the time the repair work is authorized to return to the customer any parts which are removed from the motor vehicle and replaced during the process of repair…." Id. § 59.1-207.4. Although VARFA does not define the term "parts," it can be fairly inferred from the language of the statute that the term does not refer to the vehicle as a whole, and the claim cannot, therefore, be sustained. See id. §§ 59.1-207.3, -207.4.

### C. Conversion

Reynolds initially asserted that Reliable's actions constituted conversion because Reliable had refused to return her vehicle when Reliable had no legal right to retain possession. (Compl. ¶¶ 35, 36.) However, in her amended memorandum in support of her motion for summary judgment, Reynolds has withdrawn her claim for conversion damages and now asserts that damages are being sought under a bailment claim. (Pl.'s Mem. at 14.) Accordingly, summary judgment on the original conversion claim must be DENIED AS MOOT.

### D. Fraud

Reynolds asserts that Reliable committed fraud because of Reliable's willful misrepresentation(s) regarding the repair of her vehicle. (Compl. ¶¶ 40-43.) Under Virginia State

9

law, a claim for fraud is satisfied by a showing of a false representation of a material fact, made intentionally or knowingly with the intent to mislead, reliance by the misled party, and resulting injury. Winn v. Aleda Constr. Co., 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984).

Reliable admits that it had no intention of repairing Reynolds' vehicle for $750.00. (Id. Ex. B ¶ 3.) Reliable further admits that, based upon its representation of being able to complete the work for $750.00, Reynolds had her car towed to Reliable's facility so that the transmission could be disassembled and repaired. (Pl.'s Mem. ¶ 21(d); Id. at 10; Id. Ex. C 14:8-14.) Accordingly, there is no disputed question of material fact regarding whether Reliable engaged in fraud under Virginia State law, and therefore, summary judgment on the fraud claim will be GRANTED.

**E.     Breach of Contract**

Reynolds asserts that Reliable breached its contract with her for repair of her vehicle because Reliable verbally contracted to repair the vehicle's transmission for a maximum price of $750.00, but later increased the price. (Compl. ¶ 49.) A claim for breach of contract under Virginia State law is satisfied upon a showing of a legally enforceable obligation of a defendant to a plaintiff, that the defendant violated or breached that obligation, and that the breach caused injury or damage to the plaintiff. Sunrise Continuing Care L.L.C. v. Wright, 277 Va. 148, 154, 671 S.E.2d 132, 135 (2009). A legally enforceable obligation (a contract) exists where there is an offer, acceptance, and valuable consideration. See Montagna v. Holiday Inns, Inc., 221 Va. 336, 346, 269 S.E.2d 838, 844 (1980).

Reliable admits quoting Reynolds a price of $750.00 for <u>all</u> repairs to her vehicle. (Pl.'s Mem. Ex. B ¶ 2.) Reynolds accepted Reliable's offer by delivering her vehicle to Reliable for

10

repair. (Id. Ex. C 14:8-14; Compl. ¶ 7.) Thereafter, Reliable refused to repair Reynolds' vehicle for the quoted price and, in fact, performed no repairs, while demanding payment of at least $1,500.00. Reliable's actions resulted in Reynolds being without her vehicle for some 168 days. (Compl. ¶¶ 18, 19; Answer ¶¶ 18, 19; Pl.'s Mem. ¶ 19; Id. Ex. C 23:3-37:14.) Accordingly, there is no disputed question of material fact regarding whether Reliable breached its contract with Reynolds, and, therefore, summary judgment on the breach of contract claim is required.

**F.    Bailment**

Reynolds further asserts that Reliable breached the bailment contract because Reliable had a fiduciary duty to care for Reynolds' vehicle, but it returned the vehicle in a damaged condition. (Compl. ¶¶ 53-55.) Under Virginia State law, a bailment is created when a chattel is lawfully delivered by, or with the permission of, its owner (the bailor) to a person (the bailee) who accepts possession of the chattel. K-B Corp. v. Gallagher, 218 Va. 381, 384, 237 S.E.2d 183, 185 (1977). Possession includes physical control over the thing possessed and an intent to exercise that control. Id. A bailee operating under a contract of bailment, for pay, is held to a standard of reasonable or ordinary care. Morris v. Hamilton, 225 Va. 372, 375, 302 S.E.2d 51, 52 (1983). A bailor makes out a prima facie case of breach of contract of bailment by a showing of delivery of the property to the bailee, and the bailee's failure to return it on demand or as agreed upon. Revenue Aero Club, Inc. v. Alexandria Airport, Inc., 192 Va. 231, 234, 64 S.E.2d 671, 673 (1951).

Reynolds' vehicle was towed to Reliable's place of business, Reliable instructed Reynolds to leave her vehicle for repair, and such repairs were to be performed for pay; thus, a bailment was formed. (Compl. ¶ 7; Answer ¶ 7; Pl.'s Mem. Ex. B ¶ 2.) Reynolds thereafter demanded the

return of her vehicle; however, Reliable refused to release the vehicle pending payment. (Compl. ¶¶ 18, 19; Answer ¶¶ 18, 19; Pl.'s Mem. Ex. C 36:6-10.) Furthermore, Reliable admits that Reynolds' vehicle has been damaged while in its possession; thus, a prima facie case of breach of contract of bailment has been presented.[4] (Pl.'s Mem. Ex. B ¶ 10.)

While Reynolds has established a prima facie case, Reliable, by offering a lawful excuse for its failure to perform, cannot be held liable. Volvo White Truck Corp. v. Vineyard, 239 Va. 87, 92, 387 S.E.2d 763, 766 (1990). Pursuant to Virginia State law: "Every mechanic, who shall alter or repair any article of personal property at the request of the owner of such property, shall have a lien thereon for his just and reasonable charges therefor and may retain possession of such property until such charges are paid." Va. Code Ann. § 43-33.

Reliable asserts that the pending charges of $414.75 are for work authorized by Reynolds, to wit, the reassembly of the vehicle's transmission. (Compl. ¶ 11; Answer ¶ 19; Pl.'s Mem. Ex. C 32:1-3.) However, Reliable also asserts there are additional charges of $1,500.00 for ordered parts, but parts that Reliable concedes were returned to the source. (Pl.'s Mem. Ex. C 23:3-8, 33:11-34:7, 37:6-14.) In any event, there is a material dispute as to what the charges are, whether they are reasonable, as well as whether Reliable has asserted a mechanic's lien as a lawful excuse for its failure to redeliver the vehicle to Reynolds. Therefore, summary judgment relief must be DENIED as to the claim.

## G. Virginia Consumer Protection Act

Reynolds asserts that Reliable violated the Virginia Consumer Protection Act ("VCPA"),

---

[4] See Canty v. Wyatt Storage Corp., 208 Va. 161, 162, 156 S.E.2d 582, 582 (1967) (recognizing an oral bailment agreement).

12

Va. Code Ann. §§ 59.1-196 to -206, because Reliable used deception, fraud, false promise, and misrepresentation in a consumer transaction when it promised to fix Reynolds' vehicle's transmission for $750.00.[5] (Compl. ¶ 59.) The VCPA sanctions certain fraudulent acts or practices committed by a supplier in connection with a consumer transaction. Va. Code Ann. § 59.1-200(A). A violation of the VCPA is established upon a showing of an unlawful fraudulent act or practice being committed by a supplier subject to the Act with a party engaged in a consumer transaction. See id. § 59.1-198. Specifically, the VCPA provides that: "Using … deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" is an unlawful fraudulent act or practice. Id. § 59.1-200(A)(14). Accordingly, the Virginia Supreme Court has stated that: "A misrepresentation of fact is a necessary element of proof to [a] claim for common law fraud and the claim for a violation of the Consumer Protection Act." Lambert v. Downtown Garage, Inc., 262 Va. 707, 711, 553 S.E.2d 714, 716 (2001).

It is undisputed that Reliable is a supplier as defined by the VCPA, and that the parties were engaged in a consumer transaction where it has been admitted by Reliable that it solicited business from Reynolds. (Pl.'s Mem. Ex. B ¶¶ 1, 12); see Va. Code Ann. § 59.1-198. Reliable also admits contacting Reynolds regarding repair(s) to her vehicle, that Reynolds' vehicle was towed to Reliable's place of business for repair, and that Reliable instructed Reynolds to leave her vehicle for the repair work to be performed. (Compl. ¶¶ 6-8; Answer ¶¶ 6-9.) Reliable made an

---

[5] Reynolds additionally asserts that Reliable violated the VCPA for the alleged violation of VARFA. (Compl. ¶ 59.) The VCPA provides that "[v]iolating any provision of the Automobile Repair Facilities Act…" is an unlawful fraudulent act or practice. Va. Code Ann. § 59.1-200(A)(20). Because summary judgment will be granted on the VCPA claim, as asserted, discussion of any additional basis for a violation of the VCPA is not necessary.

initial quote of $750.00 for all repairs while it also admits that it had no intention of repairing Reynolds' vehicle for that amount. (Pl.'s Mem. Ex. B ¶¶ 2, 3; Id. Ex. C 14:8-10.) Accordingly, there is no disputed question of material fact regarding whether there was a violation of the VCPA, and summary judgment on the VCPA claim will also be GRANTED.

## H. Damages

Reynolds seeks compensatory damages, statutory damages, punitive damages, attorney's fees, and court costs. Specifically, Reynolds seeks approximately $1,750.00 for the depreciation in value of her vehicle due to the damages sustained while in Reliable's possession. (Pl.'s Mem. Ex. D.) Additionally, Reynolds seeks $4,600 in compensatory damages for the prolonged period of time during which she contends she was deprived of physical possession of her vehicle, namely, from October 30, 2008 through mid-April 2009.

Reynolds also seeks statutory damages under the VCPA, which provides that "[a]ny person who suffers loss as a result of a violation of this chapter shall be entitled to initiate an action to recover damages, or $500, whichever is greater. If the ... violation was willful, [the Court] may increase damages to an amount not exceeding three times the actual damages...." Va. Code Ann. § 59.1-204(A) (emphasis added).

She further seeks punitive damages under the ECOA, which provides that "[a]ny creditor ... who fails to comply with any requirement imposed under this subchapter <u>shall be liable</u> to the aggrieved applicant <u>for punitive damages</u> in an amount not greater than $10,000 ...." 15 U.S.C. § 1691e(b) (emphasis added). In a successful ECOA action, the costs of the action and reasonable attorney's fees <u>shall</u> also be added to any award of damages.[6] Id. § 1691e(d).

---

[6] "In determining the amount of such damages in any action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and

14

The Court has considered the evidence and argument provided by Reynolds in support of her motion for summary judgment, but the Court finds that such unchallenged proffer of evidence is insufficient to determine damages as to the established claims, including, for example, the correct measure of any actual damages for the loss of use of the vehicle for a period of time. Therefore, Reynolds is not entitled to summary judgment on the issue of damages.

## IV. CONCLUSION

Where the Court will only grant Reynolds' motion for summary judgment in part, while also denying various additional claims that thereby require trial proceedings for resolution; and where the present record is not sufficient for the Court to determine damages as to the established claims, the Court will direct the Plaintiff to confirm whether or not she intends to pursue the remaining claims and, if not, to provide additional evidence and argument, if she is so advised, as to the issue of damages for the claims in regard to which dispositive relief has been granted.

An appropriate Order shall issue.

/s/
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: April 2, 2010

---

persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional." 15 U.S.C. § 1691e(b).