**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Richmond Division**

**KATHERINE REYNOLDS,**

Plaintiff,

v. Civil Action No. 3:09cv238

**RELIABLE TRANSMISSIONS, INC.,** et al.,

Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF COSTS, EXPENSES, AND REASONABLE ATTORNEY'S FEES

## I. HISTORY OF CASE

The Plaintiff initially brought this action against Reliable Transmissions, Inc., and G.E. Capital Financial, Inc., for violations of the Equal Credit Opportunity Act ("ECOA") and six (6) state law claims against Reliable Transmissions, Inc., only. After only a minimum of litigation, Plaintiff determined that G.E. Capital Financial, Inc., had not violated the ECOA and dismissed it as a defendant. Plaintiff then pursued her seven (7) claims against Reliable Transmissions, Inc. ("Defendant").

While discovery in the case was being conducted, the Defendant ceased communicating with its counsel and refused to participate in its own defense. Plaintiff then sought and was awarded summary judgment on four (4) of her seven (7) claims and dismissed the other three (3). While the Defendant made no active defense to this litigation after approximately October 1, 2010, counsel for Defendant was not allowed to withdraw and continued to mount what defense was possible.

The statutes associated with Plaintiff's successful claims of violations of the ECOA and the Virginia Consumer Protection Act (VCPA) both include provisions for an award by the Court of costs of the action and attorney's fees.

Plaintiff now presents a Johnson factors review, as required by the Fourth Circuit, with respect to an award of statutory attorney's fees and costs.

## II. ARGUMENT OF LAW

### A. STANDARD FOR AWARDING ATTORNEY'S FEES

The Equal Credit Opportunity Act, at 15 U.S.C. §1691e(d), provides in pertinent part:

> In the case of any successful action under subsection (a), (b), or (c) of this section, the costs of the action, together with a reasonable attorney's fee as determined by the court, shall be added to any damages awarded by the court under such subsection.

Because an award of attorney's fees is mandatory under the federal consumer protection statutes, as long as the Plaintiff is "successful" the fees must be awarded. Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 415 n.5 (1978). A plaintiff would be considered successful if she succeeded on any significant issue in litigation which achieves some of the benefit the party sought in bringing the suit, even if other state and federal claims are not successful. Postow v. OBA Federal Sav, & Loan Ass'n, 627 F.2d 1370, 1389 (D.C. 1980); Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983). Thus a prevailing plaintiff must obtain at least some relief on the merits of her claim and obtain an enforceable judgment against the defendant in order to qualify as a successful party. Id. at 111, 113 S. Ct. at 573. Because the Plaintiff was successful, Plaintiff is entitled to recover an award of attorney's fees.

The Virginia Consumer Protection Act, at §59.1-204(B), provides in pertinent part:

> Notwithstanding any other provision of law to the contrary, in addition to any damages awarded, such person also may be awarded reasonable attorneys' fees and court costs.

An award of attorneys' fees under the VCPA is wholly at the discretion of the Court. "When, as here, recovery of attorneys' fees is authorized by statute, the fact finder must determine from the evidence the amount of the reasonable fees under the facts and circumstances…[and]…must weigh

the testimony of attorneys as to the value of the services…and by applying to it their own experience and knowledge of the character of such services." Holmes v. LG Marion Corp., 258 Va. 473, 479, 521 S.E.2d 528, 533 (1999) (citations omitted) The Court must also keep in mind the purpose of an attorneys' fee award under the VCPA. "The fee shifting provisions of the VCPA are designed to encourage private enforcement of the provisions of the statute." Wilkins v. Peninsula Motor Cars, Inc., 266 Va. 558, 563, 587 S.E.2d 581, 584 (2003).

## B. ATTORNEY'S FEES ARE TO BE CALCULATED PURSUANT TO THE LODESTAR FORMULA

The U.S. Supreme Court has explained the calculation for an award of attorney's fees:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

Hensley v. Eckerhart, 461 U.S. 424, 433; 103 S. Ct. 1933, 1939; 76 L. Ed. 2d 40 (1983); People Who Care v. Rockford Board of Education, School Dist. No. 205, 90 F.3d 1307,1310 (7th Cir. 1996). Although this decision, and others cited hereinafter, arose in the context of the Civil Rights Attorney's Fees Award Act, 42 U.S.C. §1988, these criteria are equally applicable here. "The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" Hensley., at 103 S. Ct. at 1939, n.7. "We have stated in the past that fee-shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike." Independent Federation of Flight Attendants v. Zipes, 491 U.S. 754; 109 S. Ct. 2732, 2735 n.2.; 105 L. Ed. 2d 639, 647 n.2 (1989) (quoting Northcross v. Memphis Bd. of Education, 412 U.S. 427, 428; 93 S. Ct. 2201, 2202; 37 L. Ed. 2d 48 (1973)). The multiplication of the reasonable number of hours expended times the reasonable hourly rate is referred to as the "lodestar." Student Public Interest Research Group v. AT&T Bell Laboratories, 842 F.2d 1436, 1441

(3d Cir. 1988).

The Fourth Circuit, in Barber v. Kimbrell's, Inc., 577 F.2d 216 (1978), cert. denied, 439 U.S. 934 (1978), held that, when determining the amount of attorney's fees to be awarded under the Truth in Lending Act [Title I of the Federal Consumer Credit Protection Act, Congress' plenary regulation of the national consumer credit industry, of which the ECOA is a part], district courts must consider the twelve factors specified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). Barber at 226. The Johnson factors are:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal services properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee in the community;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount of time involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

There is no strict formula as to how these factors are to be applied. Trimpter v. City of Norfolk, Va., 846 F. Supp. 1295, 1303 (E.D. Va. 1994). Once a figure for attorney's fees is calculated using the Johnson factors, that amount becomes the "lodestar" which can then be adjusted upwards or downwards, again using the Johnson factors. Hensley, 461 U.S. at 433-34, 103 S.Ct. at 1939-40. "[M]any of those factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." 461 U.S. at 434 n.9, 103 S.Ct. at 1940 n.9. If the lodestar figure is properly calculated, adjustment will in most cases be unnecessary. Daly v. Hill, 790 F.2d 1071, 1078 (4th Cir. 1986).

1. The time and labor required.

The Defendant initially strenuously opposed Plaintiff's claims and work by counsel was

accomplished under a plan of litigation assuming that all seven (7) claims made by the Plaintiff required maximum effort and that no claim would be negotiated. Four months into the litigation, the Defendant ceased communicating with its own counsel. After the expenditure of time wherein Defendant's counsel sought to withdraw from the case, Plaintiff's counsel's efforts were directed to summary judgment and establishing damages. Plaintiff notes that attorney time spent pursuing claims against a second defendant that was dismissed have been excluded.

The time expended in this matter is appropriate to the representation of a consumer plaintiff in a case in which the plaintiff has made initial disclosures and served discovery requests on the Defendant, prepared for extensive litigation and then changed direction to pursue summary judgment and participated in two hearings in the case. The time expended was modest under the circumstances due to counsel's experience in consumer protection litigation. Withers v. Eveland, 997 F. Supp. 738, 740 (E.D.Va. 1998) (finding that "there are very few attorneys who specialize in litigating Consumer Credit Protection Act cases"); Jones v. Robert Vest, 2000 U.S. Dist. LEXIS 19026, *10. (E.D. Va. 2000) (finding that in a consumer case "the time spent on legal research would have conceivably been much greater for an attorney with less experience in this area of consumer protection law). This point is especially true in the case at bar. The Plaintiff's counsel has had to devote only a relatively modest amount of time to new legal research.

Plaintiff's attorneys have considerable experience in the area of consumer protection work and in federal litigation.

Because Plaintiff's counsel has a small law firm, the attorneys do the bulk of the work on their own. As stated in Bailey v. District of Columbia, 389 F. Supp. 888, 891 (D.D.C. 1993),

> …attorneys, like plaintiff's counsel, operating either as solo practitioners or in small firms, often lack the resources to retain a large staff of junior lawyers who could handle (certain more clerically related) tasks more economically. Denying plaintiffs compensation for these tasks would unfairly punish plaintiffs and their counsel for not staffing this case as if they had the manpower of a major law firm.

See, also Withers v. Eveland, 997 F. Supp. at 740, and Morgan v. Credit Adjustment Board, 1998 U.S. Dist. Lexis 8135 at *5.

The time spent by Plaintiff's counsel to successfully complete this litigation is therefore reasonable and provides no reason to adjust the lodestar downward. In fact, given the time saved by Plaintiff's counsel, it should be adjusted upward.

2. The novelty and difficulty of the questions.

The state law questions presented by this case were straightforward applications of law to the facts and did not present extraordinary situations to the Court. The ECOA issue before the Court was novel in its application of the notice requirements of ECOA to a situation of fraud being perpetrated by a creditor upon a consumer and was a new issue or application of law for this Court. Although this Court has been presented with many consumer cases in the past several years, to Plaintiff's counsel knowledge, this was the first case where it ruled on whether a creditor was liable for a failure to act in the context of a fraudulent transaction.

Even if the case were entirely straightforward, that fact alone is not grounds to reduce a lodestar amount. DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985) (citing Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541 (1984)).

The novelty and difficulty of the issues therefore provides no basis to adjust the lodestar downward and does provide a basis to adjust it upwards.

3. The skill requisite to perform the legal services properly.

Plaintiff's counsel knows of only a few attorneys who purport to be and are able to litigate consumer protection cases. Most attorneys do not recognize the legal issues involved in such cases, and requests for representation are generally turned away by members of the Bar. Additionally, the active and successful litigation of civil claims in federal court, particularly in the "rocket docket"

requires a higher skill level than litigation in a less vigorous forum.

4. The preclusion of other employment.

The time spent on this case was not, and could not be, spent at the same time on other cases. There are substantial opportunity costs in preparing the necessary documentation and briefing to represent a plaintiff in a contingency or fee shifting case in federal court. The amount of time expended on Plaintiff's behalf by counsel was time which would have been spent on other matters had this case not been filed or litigated to this extent.

It is appropriate in considering what a reasonable fee would be to consider that whenever an attorney takes a case, he does so to the exclusion of accepting other work. Plaintiff's counsel expended the requisite amount of time reviewing the case and litigating it to its conclusion to the exclusion of helping other consumers. Thus, some consumers did not receive counsel's help so that Ms. Reynolds could. Counsel does not have anything close to the resources of a large firm and must pick, choose and turn down cases accordingly.

It is clear that the time spent on this case would have been expended on other matters, and therefore this factor provides no basis for any adjustment of the lodestar.

5. The customary fee for like work in the community.

Plaintiff's fee request is well within the range of similar work and is an amount recognized by other courts for counsel's work. Their fee is thus reasonable and the going rate for like work in this area.

Federal litigation, particularly before a jury and in the Eastern District of Virginia, is challenging and requires an experienced knowledge of sometimes complex rules of civil procedures and of evidence. Legal fees for attorneys experienced in this area of work are rightly in the upper echelon of hourly rates.

This Johnson factor is addressed in greater detail under factor *infra*, Awards in Similar Cases.

6. Whether the fee is fixed or contingent.

In consumer protection cases, the fee is very often contingent -- not on the amount of damages, but on award by the court or agreement of the opponent. In a private attorney general case, Congress encourages counsel to bring suit, recognizing that counsel cannot charge the client an hourly fee, because the fee may be out of proportion to the recovery. Johnson, 488 F.Supp. at 718, ruled that the fixed/contingent nature of the fee was important because, "In no event, however, should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to an amount." This portion of the ruling was expressly rejected by the Supreme Court in Blanchard v. Bergeron, 489 U.S. 87, 93, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989): "But as we see it, a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees and to hold otherwise would be inconsistent with the statute and its policy and purpose." Conversely, the Court ruled that the fee award does not impose a cap on a contingent fee agreement; the attorney can get more from his client (not from the opponent) if his agreement so provides. Venegas v. Mitchell, 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). Nor does the contingency factor provide a basis for an upward adjustment of the fee request. City of Burlington v. Dague, 505 U.S. 557, 112 S. Ct. 2638, 120 L.Ed.2d 449 (1992). Thus the current cases hold that the fixed or contingent nature of the fee agreement neither reduces nor enhances the fee award. If contingent, the fee award should compensate counsel for the risk of receiving no compensation. "Lawyers operating in the marketplace can be expected to charge a higher hourly rate when their compensation is contingent on success than when they will be promptly paid, win or lose." Blum v. Stenson, 465 U.S. 886, 903, 104 S.Ct. 1541, 1551, 79 L.Ed.2d 891 (1984).

The importance of the contingent nature of fees in consumer cases and the need to maintain those fees at the highest reasonable market rate applicable cannot be overemphasized. "As an initial matter, contingency fees provide access to counsel for individuals who would otherwise have

difficulty obtaining representation. Sadly, a plaintiff sometimes has little to offer a lawyer other than his personal plight." In re Abrams & Abrams, 2010 WL 1971240 at 12 (C.A.4 (N.C.), May 18, 2010). The availability of an award of reasonable fees is doubly important in consumer matters like the ECOA, VCPA, Fair Credit Reporting Act, Fair Debt Collections Practices Act and Truth in Lending Act where successful statutory damage awards may be limited to $1000.00 and actual damages may be de minimis, nonexistent or limited to the price of a refrigerator, a chair or any other modestly priced consumer good. The stated intent of the VCPA is that it "shall be applied as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Code of Virginia §59.1-197. This intent cannot be realized without lawyers working as private attorneys generals that can expect a reasonable fee. The Court in Abrams referred to percentage contingencies in its opinion and the same rationale applies to court awarded fees in consumer cases. "Ignoring reasonable contingent fee arrangements or automatically reducing them would impair claimants' ability to secure representation." Abrams, at 13 (citing Wells v. Sullivan, 907 F.2d 367, 371). "The point remains that contingency fees are an acknowledged feature of our legal landscape, approved by legislative and judicial bodies alike, that help secure for the impecunious access both to counsel and to court." Id.

Plaintiff's counsel was willing to provide services to Ms. Reynolds whether she won or lost her case and whether or not she got paid for that work. This factor provides no basis here for any change in the lodestar amount, but provides ample support for approval of a lodestar amount at the high end of market compensation for legal counsel.

7. Time limitations imposed by the client or the circumstances.

The time limits in this case were only those imposed by the applicable statutes of limitations, the Rules, and those set by the Court. In the Eastern District of Virginia, these time limitations are often substantial. There were no other unusual time restraints upon counsel and this factor provides

no basis for either an upwards or downward adjustment to the lodestar.

8. The amount involved and the results obtained.

"[C]ourts generally will not look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." Smith v. Chapman, 436 F. Supp. 58, 66 (W.D. Tex. 1977). (The plaintiff recovered the maximum $1,000.00 statutory damages available under the Truth in Lending Act. His attorney's practice is limited primarily to consumer law, and he had been actively engaged in consumer law for several years as an attorney representing consumers and as a speaker at consumer law seminars.)

The Fourth Circuit addressed the issue of proportionality between the consumer's recovery and the amount of attorney's fees to be awarded in Yohay v. City of Alexandria Employees Credit Union, 827 F.2d 967 (4th Cir. 1987), a case involving the FCRA. In rejecting a claim by the defendant urging proportionality, the Fourth Circuit stated:

> Proportionality of attorney's fees to the amount recovered is not required in every action brought pursuant to the FCRA. Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act. Id. at 974.

The Court came to a similar conclusion in a case for fees in a successful Truth In Lending Act ("TILA") action, concluding that the maximum recovery of $1000.00 allowed by TILA was not a *de minimis* amount justifying reduction of an attorney's fees award and that the "fees properly may include reimbursement for work performed at all stages of the litigation." Nigh v. Koons Buick Pontiac GMC, Inc., 478 F.3d 183, 190 (4th Cir. (Va.) 2007).

Plaintiff's award in this case is based on the successful litigation of claims pursuant to two consumer protection statutes, the federal ECOA and the state VCPA. Therefore, the significant success by Plaintiff provides no reason for any downward adjustment of the lodestar but can provide a basis to upwardly adjust the lodestar amount.

9. The experience, reputation and ability of the attorney.

The experience, reputation, and ability of Plaintiff's counsel are reflected in her Declaration. Counsel has substantial experience with consumer protection actions litigated in federal court and is capable of handling litigation such as the case here. This can provide a basis to upwardly adjust the lodestar amount.

10. The undesirability of the case.

To counsel's knowledge, there are only a handful of attorneys who practice in the Richmond (where the action was brought) or Hampton Roads (where the Plaintiff resided) market who also practice in federal court and who are knowledgeable and experienced in the area of consumer protection law. Of those few attorneys, even fewer litigate cases under the ECOA. This limited access to legal services for consumers is due in the largest part to the undesirability of these cases. This case is a good example of why. To most attorneys, Plaintiff's case would be seen as no more than a breach of contract case or, at the very most, a fraud case. In a successful action on either claim Plaintiff would have been awarded no more than her actual damages, significantly less than $10,000.00, and would have no opportunity for an award of attorneys fees in any amount. Few attorneys would have taken the case and then only with payment from the Plaintiff, most likely in excess of her maximum possible award. Fewer still would have recognized the much more significant ECOA violation or considered an action in federal court. The only way for Ms. Reynolds to enforce her rights was for her to find counsel who would be willing to devote and risk a considerable amount of her own time - her stock and trade - without any guarantee of payment. Few attorneys are willing to accept these risks. But fewer still would help at all if they are unable to count on a full fee award if successful at trial. Thus, Plaintiff's counsel's willingness to take a case that other lawyers will not handle can provide a basis to upwardly adjust the lodestar amount.

11. The nature and length of the professional relationship with the client.

Plaintiff's counsel was retained particularly for pursuit of this claim in federal court on specialized consumer protection law issues. Her employment was sought because of her legal abilities and reputation in this area of the law.

This Johnson factor is in some respects inapplicable or neutral to an attorney whose representation is limited to consumer protection claims, which are transactional, and not ongoing, matters.

12. Awards in similar cases.

The award sought in this case is similar to awards sought in other cases and Plaintiff's attorney's fee request is within the prevailing market range in this type of representation. Blum v. Stenson, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). The federal courts recognize that fee awards are to mimic the marketplace. Thus, "[p]aying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." Tolentino v. Friedman, 46 F.3d 645, 653 (7th Cir. 1995). Zagorski v. Midwest Billing Services, Inc., 128 F.3d 1164 (7th Cir. 1997). See also Diaz v. Paragon motors, 2008 WL 2004001 (E.D.N.Y.), May 7, 2008 (awarding lodestar fees in an ECOA case using attorney rates of $245 - $375). For these reasons, the size of the award sought provides no reason to make any adjustment to the lodestar.

In fact, in another Eastern District, Richmond Division, case that Plaintiff's law firm took to a jury, Parrish v. Greater Mid-Atlantic Finance, Civil Action No. 3:01CV532, Judge Lowe awarded the Plaintiff in excess of $34,000.00 in attorneys' fees on a statutory damage award of $5,000.00 under the ECOA. In that case, Plaintiff's counsel divided the labor with a second attorney. However, there were no depositions taken and few, if any, pretrial motions.

Thus, the lodestar calculation for the award of attorney's fees to the Plaintiff in this matter for the time expended thus far by her attorney's totals $25,912.50, 37.75 hours at $350.00 per hour, 38.0

hours at $275.00 per hour, and %.0 at $450.00 per hour.

Plaintiff requests reimbursement for $574.00 in costs and expenses, itemized as follows:

$350.00 filing fee to the Court

$ 24.00 service fees

$200.00 expert witness fees

These costs are recoverable in addition to the attorney's fees. "[C]osts - other than attorney's fees – should be allowed to the prevailing party." Rule 54(d)(1) of the Federal Rules of Civil Procedure; see also 15 U.S.C. §1691e(d).

Adding the attorney's fee request of $25,912.50 and the costs request of $574.00 produces a total request of $26,486.50.

## III. CONCLUSION

Attorney's fees should be awarded to Plaintiff's counsel in the amount of $25,912.50 for work performed on her behalf. Plaintiff should also be reimbursed her expenses for the filing fee and other costs, which total $574.00. The total request at this time is $26,486.50.

KATHERINE REYNOLDS

_________/s/_______________

Robin A. Abbott, Esq.
Virginia State Bar #46596
Attorney for Katherine Reynolds
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
rabbottlaw@msn.com

CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of May, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Robert R. Musick (VSB # 48601)
THOMPSON McMULLAN, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
(804) 649-7545 telephone
(804) 780-1813 facsimile

__________/s/________________

Robin A. Abbott, Esq.
Virginia State Bar #46596
Attorney for Katherine Reynolds
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
rabbottlaw@msn.com