UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

KATHERINE REYNOLDS,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　Civil Action No. 3:09cv238

RELIABLE TRANSMISSIONS, INC., et al,

    Defendants.

### DECLARATION OF STUART T. ROSSMAN

I, STUART T. ROSSMAN, declare:

1. I am a member in good standing of the Massachusetts Bar and a senior staff attorney and Director of Litigation at the National Consumer Law Center, Inc. I have personal knowledge of the matters set forth herein, and could and would testify competently thereto if called upon to do so.

2. I have been admitted to practice before the Massachusetts Supreme Court since 1978. I also am authorized to practice before the United States District Court for the District of Massachusetts (1979), the First Circuit Court of Appeals (1979), the United States Supreme Court (1984), the United States Court of Claims (1984), the Sixth Circuit Court of Appeals (2000) and the Ninth Circuit Court of Appeals (2004). I presently am, and always have been, a member in good standing in every bar and court to which I have been admitted to practice law.

3. I am a graduate of the Harvard Law School (J.D., *cum laude*, 1978) and the University of Michigan (B.A. *magna cum laude*, 1975).

4. From 1978 to 1991 I was first an associate, and then a partner, in the litigation department at the Boston law firm of Gaston & Snow. My practice consisted entirely of civil trial cases, including, but not limited to, litigation on behalf of consumers injured by unfair and deceptive business practices.

5. From 1991 to 1999 I served as an Assistant Attorney General in the Massachusetts' Attorney General's Office. From 1991 to 1995 I was Chief of the Trial Division, representing government agencies in a wide variety of civil litigation cases, primarily in defensive, but also in affirmative, matters. The nature of the cases I supervised or tried included a full spectrum of tort and contract claims brought against the Commonwealth. The practice also included representation of government agencies in employment disputes, environmental and civil rights violation claims.

6. From 1995 to 1999 I was Chief of the Business and Labor Protection Bureau. The newly created Bureau focused on combating white-collar economic fraud through criminal and civil enforcement. It consisted of the Insurance Fraud Division, the Unemployment Fraud Division, the Medicaid Fraud Control Unit and the Fair Labor and Business Practices Division.

7. Since 1993 I have been a member of the adjunct faculty at the Northeastern School of Law teaching annual courses in Civil Trial Advocacy. In 2003 I co-taught a Consumer Law Class at the Suffolk University School of Law. I also have lectured frequently and/or chaired litigation oriented educational programs for PLI, the American Association for Justice, the National Association of Consumer Advocates, the National Legal Aid and Defenders Association, Massachusetts Continuing Legal Education, the Massachusetts Bar Association and the Boston Bar Association, among others.

8. On July 1, 1999, I became the Director of Litigation at the National Consumer Law Center ("NCLC") where I am responsible for coordinating and litigating cases on behalf of income and/or age qualified individuals, primarily in the areas of consumer financing, utilities regulation and affordable housing. In that capacity, I have been qualified to file appearances, *pro hac vice*, on behalf of consumers in numerous consumer cases, today most often in complex or appellate litigation, including matters formerly or currently pending in the United States District Courts for the Southern District of New York, New Jersey, Eastern District of Pennsylvania, Puerto Rico, Georgia, Central District of Tennessee, Northern District of Illinois, Kansas, the Central and Northern Districts of California and the Western District of Washington. In addition, I have been qualified to file appearances, *pro hac vice*, on behalf of consumers in class actions filed in the state courts of California, Ohio, Rhode Island, Washington and Wisconsin. Finally, I have participated in numerous consumer cases filed in the United States District Court for Massachusetts and the courts of the Commonwealth of Massachusetts.

9. NCLC has been referred to as the "leading non-profit low-income consumer advocacy organization in the country. Memorandum and Order, January 27, 1999, Mazola, et al v. The May Department Stores Company, United States District Court for the District of Massachusetts, 97-CV-10872-NG (J. Gertner). NCLC has been representing low-income consumers before government agencies, Congress and state legislatures since 1969. It has appeared in the United States Supreme Court and federal and state courts and has successfully presented many important cases affecting consumer borrowers. It provides consultation and assistance to legal services, private and government attorneys in all fifty states. NCLC publishes a nationally acclaimed series of

manuals on all major aspects of consumer credit and sales. It also conducts training sessions nationally on the rights of consumer borrowers for attorneys, paralegals and other counselors. NCLC works closely with lawyers representing low- income consumers, and with federal and state officials, labor unions, and community and civil rights organizations to promote justice for consumers. NCLC maintains offices in Boston, Massachusetts and Washington, D.C.

10. The Center's staff of 36 permanent employees includes 18 attorneys who possess over 160 cumulative years of specialized consumer law expertise, and one energy/utilities advocate. In addition, a changing mix of special projects attorneys, consultants, fellows, and temporary hires normally supplements the regular staff. NCLC is governed by a volunteer national board of directors that includes a past president of the American Bar Association, a former Arizona Solicitor General, as well as bar association representatives and clients from low-income communities.

11. In my capacity as Litigation Director of the NCLC , I have co-counseled with and advised attorneys on consumer cases in around the country and I am well acquainted with the resources, time and money required to successfully pursue consumer claims.

12. Effective January 1, 2007, the hourly rates for litigation services provided by NCLC advocates are:

> 20 + years experience: $475/hr
> 10-20 years experience: $375/hr.
> 5-10 years experience: $300/hr.
> 1-5 years experience: $230/hr.
> Paralegals and Law Clerks: $115/hr.

13. The hourly rates established by NCLC are based, in part, on an informal annual survey we perform to determine the standard rates charged in the Boston legal

community by private practice consumer advocates with comparable levels of experience and a recognized competence in consumer law and consumer litigation.

14. The rates also are compared with the Laffey Matrix, a matrix of hourly rates for attorneys of varying experience levels prepared by the Civil Division of the United States Attorney's Office for the District of Columbia for use in cases in which a "fee-shifting" statute, like the Fair Credit Reporting Act, permits the prevailing party to recover "reasonable" attorney's fees. The most recent Laffey Matrix, updated using cost of living adjustments measured by the Consumer Price Index for All Urban Consumers announced by the Bureau of Labor Statistics for May of each year, through May, 2009, provides for the following general practice attorney fee rates in the Washington/Baltimore area:

| Experience | Rate |
| --- | --- |
| 20+ years | $465.00/hr. |
| 11-19 years | $410.00/hr. |
| 8-10 years | $330.00/hr. |
| 4-7 years | $270.00/hr. |
| 1-3 years | $225.00/hr. |
| Law Clerks | $130.00/hr. |

U.S. Attorney's Office, District of Columbia (2005), *Laffey Matrix 2003-2010* Link Accessed May 28, 2010;
www.usdoj.gov/usao/dc.Divisions/Civil_Division/Laffey_Matrix_8.html

15. I am familiar with Leonard Bennett. I have followed his practice over the last several years and have also had the opportunity to co-counsel with him in a large national class action prosecuted under the Fair Credit Reporting Act. He is a regular invitee to speak at the annual NCLC National Conference – the largest such event in the consumer advocacy community. He has also served as a contributing author for the NCLC publication Fair Credit Reporting and has made other contributions to the field either

through my organization or in collaboration with it. I am also familiar with Mr. Bennett's reputation in this field and with significant favorable legal developments that have resulted from a number of his cases.

16. Mr. Bennett has asked me to opine as to the propriety and reasonableness of an hourly rate of $450 in a contingent fee shifting case. I am familiar with the hourly rates charged by similarly qualified attorneys in the limited field in which Mr. Bennett practices. I believe the hourly rate of $450 is more than reasonable.

17. I recognize that the present case is pending in Richmond Virginia. I expect that this is a regional market for attorney services and that if the pattern holds the average hourly rates in the legal community will be lower than in some of the larger metropolitan areas. However, I believe that Mr. Bennett's rate of $450 already reflects a reduced rate relative to the market price for his services in larger markets. For example, in a federal consumer protection case in the Los Angeles (Orange County) market, Mr. Bennett's hourly rate of $450 would place him in the range charged by some associates and less experienced or accomplished attorneys.

18. It is also my opinion that Mr. Bennett's knowledge and experience as a federal litigator in the specialized field of consumer credit protection law is not a fungible commodity that could be easily exchanged for a smaller market alternative. The area of law in which Mr. Bennett practices is as complex in Richmond as it is in New York or Los Angeles. There is a demand for his services in both large and small markets. If he is unable to charge an hourly rate of $450 in Richmond, he has opportunities to accept competing consumer protection work in larger markets where he could do so, leaving the consumers in Richmond and in Virginia unserved.

19. I have not been paid to submit this affidavit nor received or been promised any other form of compensation in consideration for its submission.

I declare under penalty of perjury of the laws of the United States that the foregoing is correct.

Signed this 28th day of May, 2010.

_____

Stuart T. Rossman