IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KATHERINE REYNOLDS,

        Plaintiff,

v.                                             Civil Action No. 3:09cv238

RELIABLE TRANSMISSIONS, INC., et al.,

        Defendants.

**MEMORANDUM OPINION**

This matter is before the Court to issue findings of fact and conclusions of law on the Complaint of the Plaintiff, Katherine Reynolds ("Reynolds"). Also pending is the Plaintiff's motion for award of attorneys' fees and costs (Docket No. 49). Counts II, III, and VI of the Complaint having been previously dismissed by stipulation of the parties (Docket No. 46) following the Court's granting of dispositive relief on the remaining claims (Docket No 37), it is the finding of the Court, for the reasons set forth herein, that Plaintiff's claims for damages for the violation of the Equal Credit Opportunity Act (Count I), fraud (Count IV), and breach of contract (Count V) are DENIED and DISMISSED, and Plaintiff's claim for violation of the Virginia Consumer Protection Act (Count VII) is GRANTED. Plaintiff's motion for an award of attorneys fees and costs (Docket No. 49) is GRANTED in PART and DENIED in PART.

**Nature of the Action**

This action arises from an alleged oral contract between Reynolds and the Defendant, Reliable Transmissions, Inc. ("Reliable"), for the repair of Reynolds' vehicle. (Compl. ¶ 1.)

The remaining counts of the Complaint include claims for violation of the Equal Credit Opportunity Act, fraud, breach of contract, and violation of the Virginia Consumer Protection Act. On April 2, 2010, the Court granted summary judgment on each of these claims as to liability only, finding that there were no disputes as to the material facts related to liability in that Reynolds had established an entitlement to relief for each claim. However, the Court declined to rule upon the issue of damages where Reynolds' proffer of evidence at that juncture was insufficient for such a determination. On May 11, 2010, the Court held an evidentiary hearing on the issue of damages, at which time Reynolds testified as to all of her claimed damages and offered the testimony of an expert witness (Mr. Tui Nyguen) as to the claim related to the damage to her vehicle.

## Issues Presented

The Court finds that the resolution of the following issues are dispositive of all claims presented:

1. Whether Reynolds has demonstrated the amount of actual and consequential damages she has suffered with reasonable certainty,

2. Whether Reynolds is entitled to punitive damages under the Equal Credit Opportunity Act,

3. Whether Reynolds is entitled to enhanced statutory damages under the Virginia Consumer Protection Act,

4. Whether Reynolds is entitled to punitive damages on her claim of fraud,

5. Whether Reynolds is entitled to attorneys' fees and costs.

## Factual Findings

The Court finds that the following facts were established by the preponderance of the evidence presented at the evidentiary hearing:

1. The vehicle at issue in this action is a 1999 Oldsmobile Delta 88 ("the vehicle").

2. Reynolds used the vehicle for personal, family, and household purposes.

3. In October of 2008, Reynolds believed that the vehicle's transmission needed to be replaced.

4. Reynolds also believed that, aside from the transmission, no other part of the vehicle required repair.

5. Reynolds is not a mechanic.

6. Reliable's agent, Mark Abraham ("Abraham"), orally offered to make all necessary repairs to the vehicle for a total of $750.00.

7. Reynolds had the vehicle towed to Reliable's place of business in reliance on Abraham's offer.

8. Reliable admits that it had no intention of repairing the vehicle for $750.00.

9. On October 30, 2008, Abraham telephoned Reynolds, and advised her that the repairs would cost $1,965.00, rather than the $750.00 to which he had earlier agreed on behalf of Reliable.

10. Reynolds thereupon instructed Abraham to cease any further work on the vehicle and to reassemble the transmission in order for her to have the vehicle returned to her residence.

11. Abraham refused to return the vehicle, and demanded $1,500.00 for its return because he had already ordered the parts necessary for the repair.

12. On October 31, 2008, Reliable falsified a credit application to Reliable on behalf of Reynolds in an effort to secure in-house financing for the repair project.

13. Reynolds did not request that she be considered for financing, and she had no knowledge that an application had been filed on her behalf.

14. Reliable denied Reynolds' application.

15. Reliable did not inform Reynolds within thirty days of the denial of the credit application; nor did it provide her with a written notice of the adverse action.

16. On November 5, 2008, Reynolds, accompanied by a Newport News police officer, went to Reliable's place of business and again demanded the return of her vehicle, which was denied pending the payment of the $1,500.00 that had been demanded.

17. Reynolds instituted this action against Reliable on April 20, 2009.

18. The vehicle was thereafter returned to Reynolds on April 28, 2009, without payment by Reynolds of the disputed sum.

19. Reynolds' vehicle was damaged while in Reliable's possession.

20. Reynolds claims that she suffered actual damages to her vehicle in the amount of $1,750.00.

21. The figure is based upon the testimony of Reynolds' expert witness, Tui Nyguen, who testified that the value of the vehicle was approximately $2,000.00 before it was towed to Reliable's place of business, and $250.00 upon its return to Reynolds.

22. Nyguen further testified that he did not have an opportunity to personally inspect the vehicle before Reynolds had it towed to Reliable, and that he had no knowledge of the condition it was in at that time.

23. Nyguen further testified that he did not personally inspect the vehicle after it was returned to Reynolds; but rather, he based his opinion on photographs of the vehicle provided him and on Reynolds' statements describing the damage to the vehicle.

24. Reynolds further claims that she was damaged insofar as she was deprived of the use of her vehicle for more than one year.

25. During the time that the vehicle was in Reliable's possession, Reynolds did not obtain a rental car or incur any expenses for travel; rather, she relied on friends and family members for transportation.

26. The vehicle remains in a state of disrepair.

27. Reynolds has purchased another vehicle.

## Analysis

**A.  Actual Damages**

Reynolds requests actual damages in the amount of $1,750.00 for breach of contract, fraud, and violation of the Virginia Consumer Protection Act.  In order to recover actual damages, Reynolds must prove the extent of her damages with reasonable certainty.  See Gertler v. Bowling, 116 S.E.2d 268, 270 (Va. 1960).  She need not prove the exact amount of loss with mathematical precision, but her loss must be established by facts and circumstances that would permit an intelligent and probable estimate thereof.  Id.  For example, in Gertler v. Bowling, the plaintiff sued for breach of warranty in the purchase of a used automobile and a breach of duty under a bailment contract when he returned the vehicle to the dealer for repairs.  Id. at 269.  Specifically, Plaintiff asserted that he had returned the vehicle to the defendant for repairs

approximately eight months after he purchased it, and that the vehicle had become a total loss while in the defendant's possession because vandals had stripped it of its parts, rendering it worthless. Id. On the issue of damages, the plaintiff presented evidence that he had paid $595.00 for the vehicle; that almost immediately after the purchase, the vehicle had required several repairs and that he had little use of the vehicle because of the amount of time that the vehicle was in the defendant's repair shop; that the engine block had cracked eight months later; that the defendant had quoted him a price of $100.00 to $150.00 for the repair of the engine block; and that the vehicle had been rendered worthless by the vandals. Id. The court in Gertler held that the plaintiff had sufficiently proven his damages where the defendant had fixed the value of the vehicle when he sold it to the plaintiff only eight months prior to the loss, as well as the estimated value of the necessary repair work for the engine block. Id. at 270. The Court further noted that there was little or no depreciation from plaintiff's use of the vehicle because of the frequency with which the vehicle needed to be repaired and thus unavailable for the plaintiff to use. Id. Based upon such evidence, the court was able to intelligently and fairly estimate with reasonable certainty the quantum of damages suffered by the plaintiff. Id.

Here, Reynolds claims that she suffered actual damages in the amount of $1,750.00. As earlier noted, this figure is based upon the testimony of Mr. Nyguen, who opined that the value of the vehicle was approximately $2,000.00 before it was towed to Reliable's place of business, and $250.00 upon its return to Reynolds. However, Nyguen admitted that he did not have an opportunity to personally inspect the vehicle before Reynolds had it towed to Reliable and, therefore, that he had no knowledge of the condition that the vehicle was in at that time. His estimate that the vehicle would have been worth approximately $2,000.00 was based upon little

more than speculation. Unlike the evidence presented by the plaintiff in Gertler, which fairly accounted for the diminution of in value of the used vehicle, the evidence that Reynolds has presented is insufficient to establish with a reasonable degree of certainty the value of the vehicle before it was delivered to Reliable for repairs. Without such evidence, the Court cannot determine the loss in value to the vehicle that Reynolds has incurred. Therefore, the Court cannot award Reynolds any damages measured by the loss she claims to have suffered as a result of her reliance on Reliable's promise to repair it.

Ordinarily, a plaintiff in an action for breach of contract would be entitled to recover expectation damages, or damages "intended to put the injured party in the same position in which it would have been had the contract been performed." Marefield Meadows, Inc. v. Lorenz, 427 S.E.2d 363, 366 (Va. 1993). Had the contract at issue here been performed as Reynolds expected, the transmission on the vehicle would have been repaired for no more than $750.00. Thus, the proper measure for her expectation damages would be the cost to have the transmission repaired by another repair shop minus $750.00. However, Reynolds has offered no evidence of what it would cost to do so. Indeed, Reynolds has not sought to have the vehicle repaired, and has instead chosen to purchase a new vehicle. Reynolds has thus failed to carry her burden of proving her actual damages as a result of Reliable's breach.

Accordingly, although the Court has found that Reynolds likely sustained actual damages for which she ought to be compensated, her offer of proof on the amount of those damages is insufficient to enable the Court to fix with a sufficient degree of certainty a definite sum as to the amount of damages sustained. Because she has failed to sufficiently carry her burden of proof, her request for actual damages must be denied.

**B.     Consequential Damages**

Reynolds also seeks consequential damages in the amount of $4,600.00 for fraud and $750.00 for breach of contract. Her briefing provides no description of the consequential damages suffered as a result of the fraud, or how she calculated such damages to be $4,600.00.[1] Therefore, the Court denies Reynolds' request for consequential damages for fraud where it is utterly unsupported.

With regard to her request for $750.00[2] for breach of contract, the Court finds that the amount does not represent the consequential damages, if any, suffered by Reynolds as a result of Reliable's breach. In contrast with so-called "direct damages," which are damages that arise "naturally" or "ordinarily" from a breach of contract, or which can be expected to result from a breach, consequential damages are damages that arise from the intervention of "special circumstances," not ordinarily predictable, but, nonetheless, known by the breaching party. Roanoke Hosp. Ass'n v. Doyle & Russell, Inc., 214 S.E.2d 155, 160 (Va. 1975). Reynolds has not demonstrated that she suffered any special damages, aside from those actual damages that naturally or ordinarily arose from the breach, which have been addressed. Therefore, she is not

---

[1] At the hearing, Reynolds indicated that she was seeking damages measured by the payments that she made to the holder of her car note and payments that she made to her insurance company for the insurance coverage on the vehicle. She has presented no evidence of the amount that she has actually paid for either of the obligations during the relevant time period, and thus, the Court is unable to determine whether those payments are the basis for her claim for $4,600.00. In any event, Reynolds is not entitled to recover from Reliable the value of her car payments and car insurance. Reynolds' contractual obligations to her note holder and insurer are irrelevant in regard to the claims presented in her Complaint. She is obligated by contract and state law to satisfy those obligations, regardless of whether the vehicle is in her possession or not. Therefore, the amount of those payments are simply not a proper measure of her damages.

[2] The Court presumes that this figure is based upon the original quote provided by Reliable for the repair of Reynolds' vehicle.

entitled to recover any consequential damages, as well.

**C.     Punitive Damages Pursuant to the Equal Credit Opportunity Act**

Reynolds further seeks punitive damages pursuant to the Equal Credit Opportunity Act ("ECOA"), which provides, in part, that "[a]ny creditor . . . who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $10,000 . . . ." 15 U.S.C. § 1691e(b). "In determining the amount of such damages in any action, the court shall consider, among other relevant factors, [1] the amount of any actual damages awarded, [2] the frequency and persistence of failures of compliance by the creditor, [3] the resources of the creditor, [4] the number of persons adversely affected, and [5] the extent to which the creditor's failure of compliance was intentional." 15 U.S.C. § 1691e(b). In addition, punitive damages may be awarded pursuant to the ECOA regardless of proof of actual damages, if the defendant's conduct was wanton, malicious, or oppressive, or if the defendant acted in reckless disregard of the law. Fischl v. Gen. Motors Acceptance Corp., 708 F.2d 143, 148 (5th Cir. 1983); Anderson v. United Finance Co., 666 F.2d 1274, 1278 (9th Cir. 1982) ("punitive damages may be awarded even absent a showing of any actual damages.").

The first factor -- the amount of any actual damages awarded -- cannot be considered in favor of an award of punitive damages because the Court has not awarded Reynolds any actual damages. While the Court finds that the factor could be considered in favor of an award of punitive damages if Reynolds had carried her burden in proving the amount of her damages with reasonable certainty, she has not done so.

Second, the Court can consider the frequency and persistence of failures of compliance

by the creditor. The Court granted summary judgment in favor of Reynolds on the alleged violation of the ECOA only on the basis that Reliable failed to notify her of the denial of her credit application, the reasons for the denial, the identity of the person from whom a statement of reasons could have been obtained, and her right to have the statement of reasons confirmed in writing on request. Such was but a single failure of compliance by Reliable required to be in but a single notice, and it cannot, therefore, be the basis for an award of punitive damages where there is no evidence of frequency or persistence.

In regard to the third factor -- the resources of the creditor -- no evidence was presented on which to base an analysis of the factor, and therefore, it is not a factor either.

Additionally, the Court must consider the number of persons adversely affected. Only one person (Reynolds) was adversely affected by Reliable's failure to comply with the ECOA; therefore, that factor provides but scant support for an award of punitive damages.

Finally, the Court must consider the extent to which the creditor's failure of compliance was intentional. As discussed, the basis for the Court's finding that Reliable violated the ECOA was Reliable's failure to notify Reynolds of the denial of the credit application that included the required information. Reynolds has presented no evidence that such failure to provide the required notice was intentional, other than it being, at most, negligent.

Accordingly, on balance, the relevant factors do not weigh in favor of an award of punitive damages. The Court, therefore, declines to award punitive damages for Reliable's violation of the ECOA.

**D. Enhanced Statutory Damages for Violation of the Virginia Consumer Protection Act**

Reynolds also seeks statutory damages pursuant to the Virginia Consumer Protection Act ("VCPA"), which provides, in pertinent part, that "[a]ny person who suffers loss as a result of a violation of this chapter shall be entitled to initiate an action to recover damages, or $500, whichever is greater." Va. Code § 59.1-204(A). Inasmuch as the Court has found that Reynolds has suffered a loss, but has failed to prove the amount of her damages in excess of $500.00 to a degree of reasonable certainty, the Court will award the statutory damages alternative of $500.00.

The VCPA further provides that where the violation was willful, the Court "may increase damages to an amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater." Id. The Court must, accordingly, determine whether Reliable's violation of the VCPA was willful. "Willful violations are those that involve knowing and intentional disregard of the protections afforded consumers." Synergistic Intern., LLC v. Korman, 402 F. Supp. 2d 651, 666 (E.D. Va. 2005), vacated on other grounds, 470 F.3d 162 (4th Cir. 2006). The VCPA sanctions the use of "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code § 59.1-200(A)(14). In ruling upon Reynolds' motion for summary judgment, the Court found that Reynolds had proven a violation by Reliable as follows:

> It is undisputed that Reliable is a supplier as defined by the VCPA, and that the parties were engaged in a consumer transaction where it has been admitted by Reliable that it solicited business from Reynolds. (Pl.'s Mem. Ex. B ¶¶ 1, 12); see Va. Code Ann. § 59.1-198. Reliable also admits contacting Reynolds regarding repair(s) to her vehicle, that Reynolds' vehicle was towed to Reliable's place of business for repair, and that Reliable instructed Reynolds to leave her vehicle for the repair work to be performed. (Compl. ¶¶ 6-8; Answer ¶¶ 6-9.) Reliable made

an initial quote of $750.00 for all repairs while it also admits that it had no
intention of repairing Reynolds' vehicle for that amount. (Pl.'s Mem. Ex. B ¶¶ 2,
3; Id. Ex. C 14:8-10.)

(Mem. Op. on Pl.'s Mot. for Summ. J., Apr. 2, 2010.)

Reliable has admitted to contacting Reynolds regarding repairs to her vehicle, and that it had no intention of making the repairs for the quoted price of $750.00. The Court therefore finds that Reliable acted with knowing and intentional disregard to the protections afforded to Reynolds as a consumer by perpetrating a fraud upon her. Thus, Reliable's violation of the VCPA was willful, and, accordingly, the Court will treble Reynolds' damages for the violation and award her the sum of $1,500.00.

**E.     Punitive Damages for Fraud**

Reynolds further seeks $10,000.00 in punitive damages for Reliable's perpetration of a fraud upon her. "Punitive damages, the purpose of which is not so much to compensate the plaintiff but to punish the wrongdoer and to warn others, may be recovered 'only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others.'" Hamilton Dev. Co. v. Broad Rock Club, Inc., 445 S.E.2d 140, 143 (Va. 1994) (citing Giant of Va., Inc. v. Pigg, 152 S.E.2d 271, 277 (1967); Puent v. Dickens, 427 S.E.2d 340, 342 (1993)).

The Court found that Reynolds had proven the perpetration of a fraud upon her to the extent that it was undisputed that she had her vehicle towed to Reliable's place of business in reliance on Reliable's promise to complete all repairs for $750.00, and that Reliable had no intention of repairing the vehicle for that amount. Such are the same facts upon which the Court concluded that Reliable had violated the VCPA. To the extent that the Court's award of treble

damages under the VCPA is based upon the same facts as those supporting the claim of fraud, and the Court finds that the award of treble damages under the VCPA is sufficient to further the purposes of a punitive damages award (punishing the wrongdoer and warning others), the Court declines, within its discretion, to award Reynolds any additional punitive damages where such would suggest a so-called "double recovery."

**F.     Attorneys' Fees and Costs**

Finally, Reynolds has moved for an award of attorneys fees in the total amount of $32,587.50 and costs in the additional amount of $574.00 pursuant to the ECOA,[3] 15 U.S.C. § 1691e(d), and the VCPA,[4] Va. Code § 59.1-204(B). Reliable does not dispute that Reynolds is entitled to an award of fees and costs, but it disputes the amount of the fees requested as being excessive, given the nature and procedural history of the case. For example, Reliable asserts that Reynolds' claim for twenty-three hours spent in drafting discovery requests that consisted of twenty-seven requests for production of documents, fifteen interrogatories, and twelve requests for admission, is excessive. Since the basis for an award of fees is undisputed, the only issue before the Court is whether Reynolds' request is reasonable.

The Court is guided in its analysis of the reasonableness of Reynolds' request for fees by

---

[3] With regard to fees and costs, the ECOA provides: "In the case of any successful action under subsection (a), (b), or (c) of this section, the costs of the action, together with a reasonable attorney's fee as determined by the court, shall be added to any damages awarded by the court under such subsection." 15 U.S.C. § 1691e(d). Inasmuch as the Court has not awarded Reynolds actual or punitive damages under the ECOA, its award of fees and costs will not be based on the statute.

[4] The VCPA provides: "Notwithstanding any other provision of law to the contrary, in addition to any damages awarded, such person also may be awarded reasonable attorneys' fees and court costs." Va. Code § 59.1-204(B).

the factors set forth initially in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), adopted in this circuit in Barber v. Kimbrell's, Inc., 577 F.2d 216, 226-28 (4th Cir. 1978), and approved by the Supreme Court in Blum v. Stenson, 465 U.S. 886 (1984), and Hensley v. Eckerhart, 461 U.S. 424 (1983). The often-cited, so-called Johnson factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the preclusion of other employment by the attorney as a result of acceptance of the case; (5) the customary fee for like work; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship with the client; and (12) attorneys' fees awards in similar cases.

Rehab. Ass'n of Va., Inc. v. Metcalf, 8 F. Supp. 2d 520, 527 (E.D. Va. 1998).

In addition, certain basic rules and guidelines emerge from an analysis of relevant case precedent:

1. The moving party has the burden of "establishing the reasonableness of the requested amount both by showing the reasonableness of the rate claimed and the number of hours spent." Rehab. Ass'n of Va., Inc., 8 F. Supp. 2d at 527.

2. A court must make "detailed findings of fact with regard to the factors considered . . . in arriving at a determination of reasonable attorneys' fees in any case where such determination is necessary." Barber, 577 F.2d at 229.

3. The "reasonableness of the rate" must be based on an assessment of the prevailing market rate in the relevant legal community "for similar services by lawyers of reasonably comparable skill, experience, and reputation . . . ." Blum, 465 U.S. at 895-96 n.11; see also Rehab. Ass'n of Va., Inc., 8 F. Supp. 2d at 527 (citing authority); Am. Canoe Ass'n v. EPA, 138 F. Supp. 2d 722, 740-41 (E.D. Va. 2001).

4. The court can and should assess the degree of skill demonstrated in performing the representation and factor that into a determination of the prevailing market rate. See Johnson, 488 F.2d at 718.

5. Many of the factors involved in the Johnson twelve point analysis are "subsumed

within the initial calculation of hours reasonably expended at a reasonable hourly rate." Hensley, 461 U.S. at 434 n.9.

6. The hourly rate charged consistent with the prevailing market rate, multiplied by the number of hours spent, equals the "lodestar" figure that is presumed to be reasonable. See, e.g., U.S. Football League, et al. v. Nat'l Football League, 887 F.2d 408, 413 (1989).

7. In addition, the lodestar figure may be adjusted upward or downward to take into account additional or remaining factors set forth in the twelve point analysis of Johnson so as to result in a combined lodestar and Johnson standard whereby "the product of reasonable hours times a reasonable rate represents a proper fee . . . ." In re Great Sweats of Va., Inc., 109 B.R. 696, 697-98 (E.D. Va. 1989) (discussing the evolution of relevant precedent to result in the combined analysis); see also, EEOC v. Serv. News Co., 898 F.2d 958 (4th Cir. 1990) (holding that the twelve factors should be considered in determining the lodestar figure).

8. "[W]here full relief is obtained, the plaintiff's attorney should receive 'a fully compensatory fee,' and in some cases of exceptional success, even an enhancement." Rehab. Ass'n of Va., Inc., 8 F. Supp. 2d at 529 (quoting Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994) (quoting Hensley, 461 U.S. at 435)).

9. "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." Johnson, 488 at 717.

10. An objecting party must demonstrate specific instances of unreasonable charges and/or efforts and cannot simply rely on general protestation. Blum, 465 U.S. at 892 n.5; U.S. Football League, 887 F.2d at 413.

Given such guidelines, the Court will employ the following sequential analysis that is premised on the process prescribed by Blum whereby the majority of the so-called Johnson factors are considered in the initial determination of the "lodestar" figure. First, the Court will determine the number of compensative hours for each attorney, taking into consideration: (a) any excessive duplication of effort as indicated by conferences among co-counsel, review of co-counsel's product, and duplicative attendance at proceedings; (b) excessive or otherwise unwarranted background research and/or educational efforts; (c) excessive, unreasonable, and/or

unauthorized discovery efforts; and (d) reduced time an/or hourly rate for travel time or other non-legal tasks.  Second, the Court will determine the prevailing market rate for each attorney, taking into consideration the expertise and experience of each.  Third, the Court will adjust the "lodestar" figure (adjusted hours multiplied by each hourly rate) for the remaining Johnson factors, including the complexity of the case, any extraordinary skill required to address it, its undesirability, the degree of any exceptional success achieved, the preclusion of other work for the attorneys involved, any pre-existing relationship with the client, the existence of any special fee arrangement, and any pressure of any involuntary time constraints imposed.  Finally, the Court will determine the reasonable costs incurred.

        **1.**        **Counsel's Compensative Efforts**

As the Supreme Court noted in Hensley, the starting point in establishing the proper amount of an award is the number of hours reasonably expended, multiplied by a reasonable hourly rate.  Hensley, 461 U.S. at 433.  Reliable disputes the reasonableness of the hours expended in the prosecution of this case, but not the assigned hourly rates.  To determine a reasonable number of hours, a court may subtract "hours which were duplicative, unproductive, excessive, or otherwise unnecessary."  United States v. Metro. Dist. Comm'n, 847 F.2d 12, 16 (1st Cir. 1988).

Plaintiff's counsel assert that they devoted time to Reynolds' case as follows: 45.75 hours by Robin A. Abbott, 30 hours by Gary A. Abbott, and 13 hours by Leonard A. Bennett.  Among the entries on counsel's time records are entries for discovery requests prepared by Robin Abbott

and Gary Abbott totaling twenty-three hours.[5] Reliable contends that twenty-three hours is an excessive amount of time for the preparation of discovery requests. Specifically, Reliable notes that the discovery requests consisted of twenty-seven requests for production of documents, fifteen interrogatories, and twelve requests for admission. Given counsel's known experience in the area of consumer protection litigation, the Court agrees that twenty-three hours is excessive for the task of drafting discovery requests that should have been, for the most part, straightforward and obvious. The Court deems that such a task could have been completed in approximately half the time, resulting in a reduction of two and one half hours for Robin Abbott and nine hours for Gary Abbott.

Reliable has not identified any other fees requested by Plaintiff's counsel that it asserts to be excessive, and the Court does not perceive any. The Court has reviewed counsel's time records and finds that, but for the time for discovery requests discussed, the hours expended by each of the attorneys on this case were reasonable. Thus, the Court approves the following hours for each of Plaintiff's attorneys: 43.25 hours for Robin Abbott, 21 hours for Gary Abbott, and 13 hours for Leonard Bennett.

   2.     **Prevailing Market Rates**

The Court must next determine the prevailing market rate for each attorney, taking into consideration the expertise and experience of each. Plaintiff's counsel asserts an hourly rate of $350.00 for Robin Abbott, $275.00 for Gary Abbott, and $450.00 for Leonard Bennett. Reliable does not dispute the rates, and the Court otherwise finds such hourly rates to be reasonable and

---

[5] Of the twenty-three hours, five hours were expended by Robin Abbott, and eighteen hours by Gary Abbott.

appropriate, the Court being familiar with comparable market rates and the level of expertise demonstrated by each counsel in numerous appearances before the Court. Accordingly, the Court will apply the listed rates in its calculation of attorneys' fees.

The Court calculates the lodestar as follows:

| | | |
|---|---|---|
| Robin Abbott | 43.25 hours at $350.00/hour | $15,137.50 |
| Gary Abbott | 21 hours at $275.00/hour | $5,775.00 |
| Leonard Bennett | 13 hours at $450.00/hour | $5,850.00 |
| Total | | $26,762.50 |

### 3. Combined Lodestar and Johnson Standard

The Court may adjust the above-stated "lodestar" figure for the remaining Johnson factors, including the complexity of the case, any extraordinary skill required to address it, its undesirability, the degree of any exceptional success achieved, the preclusion of other work for the attorneys involved, any pre-existing relationship with the client, the existence of any special fee arrangement, and any pressure of any involuntary time constraints imposed.

The questions presented by this case were all straightforward applications of the law to the relevant facts and the case did not present any extraordinary issues such that resolution of the issues did not require any extraordinary skill. Nor was any degree of exceptional success achieved by Reynolds, and, to the Court's knowledge, Plaintiff's counsel was not subjected to the pressure of any involuntary time constraints. Plaintiff's counsel accepted the case on a contingent fee basis, and they were precluded from accepting other employment because of their involvement. However, neither factor, standing alone, is sufficient, in the opinion of the Court, to warrant an upward adjustment of the lodestar.

The Court, therefore, finds that the total amount of reasonable attorney's fees to be

awarded is $26,762.50.

### 4. Costs

Plaintiffs seek an award of their costs in the amount of $574.00. Reliable does not object to an award of costs in this amount. Therefore, the Court finds that the total amount of costs recoverable by Reynolds is the unchallenged amount of $574.00.

### Conclusion

For the reasons stated, Plaintiff's claims for violation of the Equal Credit Opportunity Act (Count I), fraud (Count IV), and breach of contract (Count V) are DENIED and DISMISSED for Plaintiff's failure to adequately prove the amount of her actual and/or consequential damages and for her failure to demonstrate a sufficient basis for an award of punitive damages under the ECOA; and Plaintiff's claim for violation of the Virginia Consumer Protection Act (Count VII) is GRANTED. Plaintiff's motion for an award of attorneys fees and costs (Docket No. 49) is GRANTED in PART and DENIED in PART. Final judgment will be entered for the Plaintiff, and against the Defendant, in the amount of $1,500.00 for enhanced statutory damages under the VCPA, plus $26,762.50 for attorneys' fees, and $574.00 for costs, for a total of $28,836.50.

A Final Order shall issue.

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Richmond, VA
Dated: June 29, 2010